UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS LOGAN,

      Petitioner,

v.

MARY BERGHUIS,

      Respondent.

_____/

Hon. Gordon J. Quist

Case No. 1:09-CV-136

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Logan's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Logan's petition be **denied**.

## BACKGROUND

As a result of events that occurred on or about February 2, 2005, Petitioner was charged with: (1) assault with the intent to rob while unarmed, and (2) assault and battery. Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Sixto Herrera**

As of February 2, 2005, Herrera (a.k.a. Tino) was 13 years of age. (Trial Transcript, July 12, 2005, 159-60). After returning home from school that day, Herrera began walking to a friend's residence. (Tr. 161-65). Herrera departed his residence at approximately 3:00 p.m. (Tr. 165). Herrera was wearing a "black button up, blue jeans, and Nike high tops" as well as a "snow cap" that "had strings on the side." (Tr. 165).

As Herrera walked down the street, he observed a man walking towards him on the same side of the street. (Tr. 165-69). The man "was walking kind of funny. . .like he was drunk or something." (Tr. 169). Accordingly, Herrera crossed to the other side of the street. (Tr. 169). The man immediately crossed to the other side of the street as well. (Tr. 169). When the man "got close to" Herrera, he "put out his arm" in an attempt to block Herrera's path. (Tr. 169-70). Herrera immediately felt "scared and uncomfortable." (Tr. 170).

Herrera had never encountered the man before, but he noticed that the man had a "spot" or "light pigmentation over by his eye." (Tr. 170-72).[1] In court, Herrera identified Petitioner as his assailant. (Tr. 172-73). Herrera "tried to get around" Petitioner, whose arms were still outstretched, but Petitioner just "moved in [Herrera's] way again." (Tr. 170). Petitioner then said to Herrera, "whoa, whoa, where are you going?" (Tr. 173). Herrera responded, "that's none of your business and none of your concern" at which point he attempted to again get around the man. (Tr. 173). Petitioner again blocked Herrera's path and then stated, "that's a nice ring." (Tr. 173). Herrera, who was wearing a gold ring, responded, "It's fake. It don't come off." (Tr. 173-74).

---

[1]   After Herrera described his assailant as possessing "a light pigmentation over by his eye," Petitioner was directed to display to the jury the right side of his face. (Tr. 171).

Herrera tried yet again to get around Petitioner.  (Tr. 175).  Herrera was able to do so, at which point Petitioner "turned around and hit [Herrera] in the back of [the] head."  (Tr. 175).

Herrera's "whole vision went blurry" and he fell to the ground.  (Tr. 175).  Petitioner then struck Herrera in the face with a closed fist.  (Tr. 175).  After being struck in the face, Herrera "put [his] hands up" to protect his face.  (Tr. 176).  Petitioner then tried to grab the ring off of Herrera's finger.  (Tr. 176).  Before Petitioner could remove the ring, however, he "backed off." (Tr. 176-77).  Herrera "looked up" and saw a police car driving down the street.  (Tr. 177).  Herrera then "got up" and ran to Ashley Evans' residence.  (Tr. 177).

When he arrived at the Evans' residence, he spoke with Charlotte Evans and told her what had just occurred.  (Tr. 177-78).  Evans then escorted Herrera back to the vicinity of the attack where Herrera spoke with the police who already had Petitioner in custody.  (Tr. 178-80).  During this conversation, Herrera identified Petitioner as his assailant.  (Tr. 178-79).

**Charlotte Evans**

Sixto Herrera was "good friends" with two of Evans' children.  (Trial Transcript, July 12, 2005, 202-03).  On the afternoon of February 2, 2005, Sixto Herrera arrived at her residence. (Tr. 205-06).  Herrera was "upset" and "shaking."  (Tr. 206).  Herrera had a "raised red mark" on his face and a portion of his hat had been "ripped off."  (Tr. 207-09).

Herrera told Evans that a man had just "pushed him down, hit him on the back of his head; and while he was down, he tried to take his ring."  (Tr. 207-08).  Because she did not have a telephone, Evans asked Herrera to take her to the location where the incident occurred.  (Tr. 208). As they neared the location, Herrera observed a police officer speaking with a man.  (Tr. 208).

Herrera immediately pointed and said, "that's the man."  (Tr. 208-09).  Evans and Herrera then walked over and spoke with the police officer. (Tr. 210). Shortly thereafter, Herrera's father arrived at the scene, at which point Evans returned home.  (Tr. 213-14).

**Celestino Herrera, Sr.**

Celestino Herrera, Sr. is the father of Sixto Herrera.  (Trial Transcript, July 13, 2005, 4-5).  On February 2, 2005, Celestino Herrera was at home when Sixto Herrera arrived home from school.  (Tr. 5).  After Sixto arrived home, he left to go to Charlotte Evans' residence to play with her son Michael.  (Tr. 5-7).  When Sixto left the house he was wearing a ring purchased for him by his father.  (Tr. 8).

Later that afternoon, Celestino Herrera and his son Buck departed the house to go to Wal-Mart.  (Tr. 7-9).  As they were driving to Wal-Mart, Herrera observed "a mob of people and police cars."  (Tr. 9-10).  Buck then saw Sixto, at which point Celestino stopped the vehicle.  (Tr. 10).  When Celestino observed Sixto, he observed that his son's face "was all red," he "had a mark on his face," and his hat was damaged.  (Tr. 10-11).  These marks were not present, and the hat was not damaged, when Sixto departed the house earlier that day.  (Tr. 8, 11-12).

While he was at the scene, Celestino also observed a man sitting in the back of a police car. (Tr. 13). Celestino observed that the man had a distinctive pigmentation around his eyes. (Tr. 13).  Celestino identified Petitioner as the man that he observed sitting in the back of the police car.  (Tr. 13).

4

**Shunita Brown**

On January 10, 2001, Brown gave Petitioner a ride in her vehicle.  (Trial Transcript, July 13, 2005, 21-22).  Once Petitioner entered the vehicle, Brown observed that "he was drunk." (Tr. 23).  When Brown arrived at Petitioner's residence, Petitioner "didn't want to get out of the car."  (Tr. 23).  Instead, Petitioner asked Brown if she had any money.  (Tr. 23).  When Brown responded, "no," Petitioner "got kind of mad" and stated, "I know you got something.  You got all this jewelry on."  (Tr. 23).  Petitioner then started grabbing Brown's hand in an attempt to remove her ring.  (Tr. 23-24).  After taking Brown's ring, Petitioner hit Brown in the face "with his balled up fist."  (Tr. 24).  Petitioner then grabbed one of Brown's necklaces and then "got out the car like nothing happened."  (Tr. 24).

**Scott Hepworth**

As of February 2, 2005, Hepworth was employed as a police officer for the City of Muskegon.  (Trial Transcript, July 13, 2005, 30).  At approximately 3:17 p.m. that afternoon Officer Hepworth was dispatched to investigate a "disorderly" and "intoxicated" person.  (Tr. 30-32).  As Officer Hepworth approached the location to which he had been dispatched, he spotted Petitioner and stopped his vehicle.  (Tr. 32-33).  Hepworth was not yet aware of the incident involving Sixto Herrera.  (Tr. 33-34).

Officer Hepworth then exited his vehicle and began speaking with Petitioner.  (Tr. 33).  Hepworth observed that Petitioner was "unsteady on his feet," "had bloodshot eyes," and "slurred speech" that was "un-understandable at times."  (Tr. 34-35).  Officer Hepworth smelled "a substance consistent with alcohol coming from [Petitioner's] breath."  (Tr. 35).  Hepworth also

observed that "there was a distinguishing feature on the right side of [Petitioner's] face." (Tr. 37). Petitioner acknowledged that he had been drinking. (Tr. 35).

Shortly after Officer Hepworth encountered Petitioner, Charlotte Evans and Sixto Herrera arrived on the scene. (Tr. 39). Herrera's face was "red" and he "appeared to be upset." (Tr. 40). Hepworth observed that Herrera had suffered an injury to his cheek. (Tr. 43). Hepworth also examined the back of Herrera's head and discovered the presence of "a lump, about a nickel to a quarter in size." (Tr. 44). Officer Hepworth also noticed that Herrera's cap was damaged. (Tr. 40). Herrera reported to Officer Hepworth that Petitioner had approached him, knocked him to the ground, punched him in the face, and attempted to steal his ring. (Tr. 40-42, 53-54).

Following the presentation of evidence, the jury found Petitioner guilty of assault with the intent to rob while unarmed and assault and battery. (Tr. 128). (Sentence Transcript, July 27, 2005, 13). Petitioner was sentenced, as an habitual offender, to serve 11-40 years in prison. (Sentence Transcript, July 27, 2005, 13-18). Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I.    Defendant-Appellant is entitled to a new trial where the trial court abused its discretion in admission of evidence pursuant to MRE 404(b).
>
> II.   Defendant-Appellant is entitled to a new trial where the closing arguments of the prosecutor denied Defendant his right to a fair trial.
>
> III.  Defendant-Appellant was denied his right to the effective assistance of counsel under the State and Federal constitutions where counsel failed to perform under the prevailing standard of reasonableness.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Logan*, 2007 WL 517366 (Mich. Ct. App., Feb. 20, 2007). Asserting the same claims, Petitioner moved in

6

the Michigan Supreme Court for leave to appeal.  The court denied Petitioner's request, stating that

"we are not persuaded that the questions presented should be reviewed by this Court."  *People v.*

*Logan,* 732 N.W.2d 899 (Mich., June 26, 2007).

On September 10, 2007, Petitioner filed in the trial court a motion for relief from

judgment in which he asserted the following claims:

I.    Defendant-Appellant was denied his right to effective
assistance of counsel which violates his Sixth
Amendment rights and provides good cause for his
post-conviction motion for relief from judgment.

II.    Defendant-Appellant was denied his rights to due
process and a fair trial under the Fourteenth
Amendment to the United States Constitution by trial
court's allowing an all white jury and trial counsel
was ineffective by failing to object.

III.    Defendant-Appellant's convictions should be set
aside where there is a significant probability he did
not commit the charged crimes for which he is
innocent violates the due process clauses of both the
Michigan and federal constitutions and their
prohibitions against cruel and unusual punishments.

IV.    Defendant-Appellant was denied his rights to a fair
trial when the judge failed to instruct the jury on
intoxication after numerous witnesses testified to
Defendant's alcohol use during the time frame he
allegedly committed these crimes and abusing his
discretion on rulings, procedures, and at sentencing.

V.    Defendant-Appellant was denied his due process by
prosecutorial and police misconduct violating his
state and federal constitutional rights.

The trial court denied Petitioner's motion.  *People v. Logan*, No. 05-51323-FH,

Opinion and Order (Muskegon Cnty. Cir. Ct., Oct. 1, 2007).  Petitioner subsequently filed in the

Michigan Court of Appeals a "Delayed Application for Leave to Appeal" in which he asserted the

7

same claims.  The Michigan Court of Appeals denied Petitioner's request because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Logan*, No. 284921, Order (Mich. Ct. App., June 10, 2008).  Petitioner appealed the matter to the Michigan Supreme Court, which likewise rejected Petitioner's application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Logan*, No. 136827, Order (Mich., Nov. 25, 2008).  On February 17, 2009, Petitioner initiated the present action.  It is not entirely clear from Logan's Second Amended Petition precisely what claims he is presently asserting, but for the reasons discussed immediately below the Court concludes that Petitioner is asserting claims I and II presented on direct appeal and all five claims asserted in his post-conviction motion for relief.

When Logan initiated this action, he failed to complete the required form petition. (Dkt. #1).  Accordingly, the Court instructed Petitioner to submit "an amended petition" using the appropriate form.  (Dkt. #3).  Petitioner's attempt to comply with this Order was insufficient and he was again instructed to "submit a second amended petition in proper form."  (Dkt. #4-5).  In his second amended petition, Logan clearly identifies the first three claims he seeks to advance.  (Dkt. #6).  In the area of the form petition in which he is to articulate his fourth ground for relief, Petitioner states "please see attached sheets for grounds 4, 5, 6 and 7."  (Dkt. #6).  Petitioner has failed to include the "attached sheets," however.  Despite Petitioner's failure to properly identify the claims he is presently asserting, it is clear from Petitioner's second amended petition (as well as his previous two petitions) that he seeks to advance in the present action the seven grounds for relief identified in the preceding paragraph.  The Court, therefore, opts to err in favor of an indulgent reading of Petitioner's pleadings and finds that Petitioner has raised in the present habeas action the

8

following seven claims: claims I and II asserted on his direct appeal and all five claims asserted in his post-conviction motion for relief.  To the extent that Petitioner's pleadings in this Court fail to articulate the basis for his various claims, the Court will turn to the pleadings Petitioner filed in the state courts.

## STANDARD OF REVIEW

Logan's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8

10

(Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must

11

apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.        Claims Presented by Petitioner on Direct Appeal

As noted above two of the seven claims raised in the present petition were presented by Petitioner to the Michigan Court of Appeals and the Michigan Supreme Court.

### A.        Evidentiary Claim

As discussed above, Shunita Brown testified regarding a previous incident involving Petitioner. According to Brown, Petitioner, who was drunk at the time, punched her in the face and stole some of the jewelry she was wearing. Prior to trial, Petitioner moved to exclude this testimony. (Trial Transcript, July 12, 2005, 129). The trial court denied Petitioner's motion on the ground that Brown's testimony was admissible pursuant to Michigan Rule of Evidence 404(b). (Tr. 138-42). Rule 404(b) provides, in relevant part, that while evidence of other crimes, wrongs, or acts "is not

12

admissible to prove the character of a person in order to show action in conformity therewith," such evidence is admissible "for other purposes, such as. . .scheme, plan, or system in doing an act." Mich. R. Evid. 404(b)(1).  The trial court found that the incidents were sufficiently similar to constitute a "common plan, or scheme, or system in doing an act."  (Trial Transcript, July 12, 2005, 140).  Specifically, the trial court found that the incidents shared the following similarities: (1) physical assault with a fist; (2) the physical assault was committed on a person who was wearing jewelry; (3) the assault was for the purpose of stealing the jewelry; and (4) the jewelry was "actually on the person" not "around them. . .in a jewelry box. . .[or] in an adjoining room."  (Tr. 140).

Petitioner alleges that the introduction of Shunita Brown's testimony denied him of the right to a fair trial.  Petitioner does not allege that Michigan Rule of Evidence 404(b) itself violates clearly established federal law.  Any such argument would nevertheless be without merit as the United States Supreme Court has never held that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.  *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007).  Instead, Plaintiff asserts that the inclusion of the specific evidence in question violated his right to a fair trial.  Petitioner raised this issue to the Michigan Court of Appeals and the Michigan Supreme Court on direct appeal.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error.  *Clemmons*, 34 F.3d at 357.

13

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not, however, "require a perfect trial," *Clemmons*, 34 F.3d at 358, and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citations omitted). Whether the admission of evidence constitutes a denial of fundamental fairness "turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege v. Yukins*, 485 F.3d 364, 375 (6th. Cir. 2007).

The Sixth Circuit has found that the improper introduction of evidence violated a criminal defendant's right to a fair trial where the challenged evidence was the only direct evidence linking the defendant to the crime. *See Ege*, 485 F.3d at 374-78. However, where there exists sufficient other  evidence of guilt and the challenged evidence is only "peripheral to the case against" the defendant, the Sixth Circuit has found no due process violation. *Collier v. Lafler*, 2011 WL 1211465 at *3 (6th Cir., Mar. 30, 2011). Shunita Brown's testimony was, at most, only peripheral to the case against Petitioner. The testimony by Sixto Herrera, Charlotte Evans, and Celestino Herrera, Sr. was more than sufficient to establish Petitioner's guilt.

The Michigan Court of Appeals rejected Petitioner's claim that the evidence in question was improperly admitted:

> We hold that the evidence was properly admitted to demonstrate both defendant's intent and a common plan, scheme, or system in doing an act. Regarding intent, defense counsel indicated that the defense was, in part, that defendant lacked the intent necessary to commit the offense of assault with intent to rob. It is well established in Michigan that all elements of a criminal offense are "in issue" when a defendant enters a plea of not guilty. In addition, defendant's intent was at issue in the case because assault with intent to rob is a specific intent crime. Accordingly, the evidence was properly admitted to demonstrate defendant's intent.
>
> Additionally, the evidence was also properly admitted to demonstrate that defendant had a common plan, scheme, or system of doing an act. "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." Here, Brown's testimony evidenced substantial similarities with the charged conduct. Both Brown and Sixto Herrera, the complainant in this case, testified that they believed defendant was intoxicated at the time of the respective incidents. Additionally, both testified that defendant commented on the jewelry they were wearing before assaulting them with a closed fist and attempting to remove their jewelry. These circumstances were sufficiently similar to demonstrate defendant's common plan, scheme, or system of robbing (or attempting to rob) both Brown and Herrera of jewelry they were wearing. Accordingly, the trial court did not abuse its discretion in determining the evidence was admitted for a proper purpose.

*Logan*, 2007 WL 517366 at *1 (internal citations omitted).

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

15

### B.        Prosecutorial Misconduct

During his rebuttal closing argument, the prosecutor made the following comment: "Ms. Smedley [Petitioner's counsel] stands before you with absolutely no evidence, absolutely no evidence upon which she can base an argument that this young man [Sixto Herrera] lied." (Trial Transcript, July 13, 2005, 101).  Petitioner's counsel objected to this statement. (Tr. 101).  The objection was overruled and the prosecutor continued with his argument, stating:

> Ms. Smedly has absolutely no evidence to present to you about why Tino Herrera would lie.  She stands before you and asks you to speculate, well, anybody would want to know why a teenager would lie.  That's asking you to grasp at straws and reach for something that just simply isn't there.  It just simply isn't there.  She couldn't develop it through cross-examination at all with that witness.  Tino Herrera took the stand and she had every opportunity to cross-examine him, and all she could do was recap every bit of evidence that I went through on direct exam and re - - have him retell the story about what happened to him.  She has absolutely nothing to base her argument on that he's made this up.

(Tr. 102).

Petitioner asserts that the prosecutor's comments constituted an improper attempt to shift the burden of proof and, therefore, violated his right to a fair trial.  Petitioner raised this issue to the Michigan Court of Appeals and the Michigan Supreme Court on direct appeal.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  Thus, even if the

16

challenged comments were improper, habeas relief is available only where the comments "were so flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897.

When assessing whether alleged prosecutorial misconduct warrants relief, the Court undertakes a two part analysis. The Court must first determine whether "the prosecutor's conduct and remarks were improper." *Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007). If such is the case, the Court must then determine "whether the impropriety was flagrant and thus warrants reversal." *Id.* at 759. When assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court considers the following factors: (1) the likelihood that the comments mislead the jury or prejudiced the accused; (2) whether the comments were extensive or isolated; (3) whether the remarks were deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused was substantial. *Id.*

While it is improper for the prosecutor to shift the burden of proof to the defendant, the prosecutor is "ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *United States v. Montgomery*, 358 Fed. Appx. 622, 631 (6th Cir., Dec. 18, 2009) (citations omitted). The prosecutor is certainly entitled to fairly respond to argument by the defendant "that impugns its integrity or the integrity of its case." *Dunn v. Sears*, 561 F.Supp.2d 444, 457 (S.D.N.Y. 2008) (citations omitted). In her closing argument, Petitioner's counsel not only argued what conclusions she believed the evidence supported, she also plainly asserted that Sixto Herrera was lying. (Trial Transcript, July 13, 2005, 85-95). The challenged portions of the prosecutor's rebuttal argument are, in the Court's estimation, a fair response to Petitioner's argument that Sixto Herrera lied.

Even if the prosecutor's comments are deemed inappropriate, the Court finds that

17

such did not deny Petitioner of a fair trial.  The trial judge instructed the jury that Petitioner was presumed innocent and that a guilty verdict was not permitted unless the prosecutor satisfied his burden of demonstrating beyond a reasonable doubt that Petitioner was guilty.  (Tr. 105-06).  The jury was also instructed that "the lawyers' statements and arguments are not evidence."  (Tr. 106).  Thus, the Court is not persuaded that the comments in question mislead the jury or prejudiced Petitioner.  Moreover, the comments were isolated and brief and the evidence against Petitioner was substantial.  The Michigan Court of Appeals rejected this particular claim stating:

> During defense counsel's closing argument, defense counsel insinuated that Herrera was lying and repeatedly attacked Herrera's credibility.  Defense counsel attacked Herrera's use of the word "uncomfortable" and commented on the lack of corroborating evidence to Herrera's testimony, including the absence of pictures of Herrera's injuries or the hat from which defendant allegedly pulled a string.  In rebuttal argument, the prosecutor stated that defense counsel presented no evidence that Herrera lied or even a motive for him to lie.
>
> We hold that the prosecutor's remarks were responsive to defense counsel's attack on Herrera's credibility and, when considered in light of these attacks by the defense, were not improper.  Because the prosecution may properly argue that a witness is worthy of belief, we conclude that the prosecutor's argument did not shift the burden of proof to defendant.  Furthermore, as noted by defendant, the trial court instructed the jury that the lawyers' statements and arguments were not evidence.  Jurors are presumed to follow the trial court's instructions, and there is no indication that defendant was denied the right to a fair and impartial trial.

*Logan*, 2007 WL 517366 at *2 (internal citations omitted).

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.**         **Claims First Presented by Petitioner in his Motion for Relief from Judgment**

The remaining five claims asserted in Logan's petition were not presented on direct appeal, but were instead first raised in Petitioner's post-conviction motion for relief from judgment. Respondent asserts that Petitioner has procedurally defaulted these particular claims as a result of his failure to satisfy the requirements of Michigan Court Rule 6.508 which provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal.  M.C.R. 6.508(D)(2)-(3).

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.  *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply; (2) the last state court rendering a judgment in the matter must have actually enforced the state procedural rule; (3) application of the procedural rule in question must constitute an "independent and adequate" state

ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner cannot demonstrate cause and prejudice excusing the default. *See Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010).

While the trial court addressed in some detail the various claims asserted in Petitioner's motion for relief from judgment, the Michigan Court of Appeals and the Michigan Supreme Court both declined to review such on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Controlling authority in the Sixth Circuit used to hold that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constituted a sufficient determination that the court's conclusion was based on procedural default thereby precluding federal habeas review. *See, e.g., Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002).

As the Sixth Circuit recently concluded, however, such form orders are no longer sufficient to establish that a petitioner has procedurally defaulted the claim in question. *See Guilmette v. Howes*, 624 F.3d 286, 288-92 (6th Cir. 2010). Instead, the Court must look to the "last reasoned state court opinion" to determine whether a particular claim has been denied on the merits or for failure to comply with a state procedural requirement. *Id.* at 291. Here, the "last reasoned state court opinion," is the decision by the trial judge denying Petitioner's motion for relief from judgment. *People v. Logan*, No. 05-51323-FH, Opinion and Order (Muskegon Cnty. Cir. Ct., Oct. 1, 2007).[2]

A review of this decision reveals that the trial court addressed on the merits four of the five issues Petitioner presented. The only claim that the court declined to address on the merits

---

[2] A copy of this decision is contained within docket entry #18.

was Petitioner's claim that his right to a fair trial was denied by the trial court's failure to instruct the jury on the defense of intoxication. Thus, Petitioner has procedurally defaulted only his claim that his right to a fair trial was denied by the trial court's failure to instruct the jury on the defense of intoxication. The other four claims asserted in Petitioner's motion for relief from judgment were denied on the merits and, therefore, have not been procedurally defaulted.

### A.        Intoxication Defense

Petitioner asserts that his right to a fair trial was denied when the trial judge failed to instruct the jury on the defense of intoxication. The trial court denied this claim "pursuant to MCR 6.508(D)(2), as the Michigan Court of Appeals has already held that defendant was not entitled to an intoxication defense." *Logan*, No. 05-51323-FH, Opinion and Order at 3.

Unlike the form orders issued by the Michigan Court of Appeals and the Michigan Supreme Court, which the *Guilmette* Court found insufficient, the trial court unambiguously declined to review the merits of this particular claim based on procedural grounds. Failure to comply with Rule 6.508(D) constitutes an independent and adequate state ground, the reliance on which precludes federal review of any issue against which it is applied. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Because Petitioner has procedurally defaulted this particular claim, he can obtain federal habeas review of such only if he can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.

As the Michigan Court of Appeals observed, in the context of a separate claim, voluntary intoxication is generally not a defense to any crime. *See Logan*, 2007 WL 517366 at *3

(citing Mich. Comp. Laws § 768.37).  The only exception to this rule is where the defendant can prove by a preponderance of the evidence that he "voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired."  Mich. Comp. Laws § 768.37(2). Thus, even if Petitioner could establish cause for his procedural default, because his intoxication defense claim is without merit, he cannot establish that the failure by the state courts to review the merits of this claim prejudiced him or resulted in a fundamental miscarriage of justice.

In sum, Petitioner has procedurally defaulted this claim preventing the Court from reviewing the merits thereof.  Moreover, even if this claim were not procedurally defaulted, such affords Petitioner no relief as such is without merit.


### B.        Ineffective Assistance of Counsel

Petitioner asserts that his trial attorney rendered ineffective assistance when she failed to call Quiasha Moffett to testify on his behalf.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.  *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011).  To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning

22

as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

Petitioner apparently submitted in the trial court an affidavit executed by Moffett in support of his motion for relief from judgment. The record before this Court, however, does not contain any such affidavit and Petitioner has failed to attach a copy of Moffett's affidavit to his petition. Because Petitioner offers no evidence in support of his position that Moffett's testimony would have advanced his cause, he cannot demonstrate that his attorney's performance was deficient. Likewise, Petitioner cannot establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. The trial judge rejected Petitioner's ineffective assistance of counsel claim, concluding:

> Defendant first asserts that he was denied effective assistance of trial counsel because she failed to call a defense witness, Quiasha Moffett. Defendant has submitted the affidavit of Ms. Moffett, which establishes that her testimony could have harmed the defense as much as helped it. She asserts that the victim was yelling that defendant had hit him and pushed him on the ground, and tried to remove the victim's ring. Defense counsel's decision not to call the witness was clearly a matter of trial strategy which does not constitute ineffective assistance of counsel."

*Logan*, No. 05-51323-FH, Opinion and Order at 1-2.

The Michigan Court of Appeals and the Michigan Supreme Court subsequently issued form orders rejecting this claim. The rejection of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

C.      **Fair Cross-Section Claim**

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  The United States Supreme Court has long held that this right includes the right to be tried by a jury drawn from a fair cross-section of the community.  *See Berghuis v. Smith*, 130 S.Ct. 1382, 1387 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)).  Petitioner alleges that his right to be tried by a jury drawn from a fair cross-section of the community was violated because the panel from which his jury was selected contained only one African-American.

To establish a prima facie violation of the fair cross-section requirement, Petitioner must demonstrate: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.  *See Berghuis*, 130 S.Ct. at 1392 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

While African-Americans are a "distinctive group" in Muskegon County, Petitioner's claim fails because he cannot satisfy the second or third prong of the analysis.  Petitioner offers no evidence that the representation of African-Americans in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community.  As for the third prong, Petitioner must do more than show that African-Americans were not sufficiently represented in the single panel from which his particular jury was selected.  *See, e.g., United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) ("defendants must show more than that their particular panel was

25

unrepresentative"). Again, Petitioner offers no evidence regarding this prong of the analysis.

The trial court rejected this claim, concluding that Petitioner had failed to present evidence that any underrepresentation of African-Americans that may have occurred was the result of systematic exclusion of that group from the jury selection process. *Logan*, No. 05-51323-FH, Opinion and Order at 3 ("[o]ne case of alleged underrepresentation of a distinctive group in the community does not rise to a general underrepresentation that is required for establishing a prima facie case"). The Michigan Court of Appeals and the Michigan Supreme Court subsequently issued form orders rejecting this claim. The rejection of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

### D.      Prosecutorial and Police Misconduct

Petitioner asserts numerous claims of police and prosecutorial misconduct. Specifically, Petitioner alleges the following instances of misconduct violated his right to a fair trial, each of which is addressed in turn.

Petitioner first argues that the prosecutor improperly introduced, through Shunita Brown, evidence that Petitioner had engaged in prior bad acts. As discussed above, it was not improper for the prosecutor to introduce this evidence and doing so did not deny Petitioner the right to a fair trial.

Petitioner next takes issue with the fact that the prosecutor referred to him as a "black man" on a handful of occasions. (Trial Transcript, July 12, 2005, 148, 212-13; Trial Transcript, July

13, 2005, 13).  The Court discerns nothing improper in the prosecutor's conduct.  Understood in context, the comments in question were nothing more than an attempt by the prosecutor to either describe what the evidence would show or formulate an accurate and precise question.  Moreover, even if the prosecutor's comments were improper, Plaintiff's right to a fair trial was not impaired. The comments were isolated and the Court fails to discern how Petitioner was prejudiced by such. Also, the evidence against Petitioner was substantial.

Petitioner next asserts that his right to a fair trial was denied when the prosecutor, in his opening statement, commented that "the intent to steal, the intent to rob is one of the most basic human instincts there are."  (Trial Transcript, July 12, 2005, 154).  While the accuracy of this statement may be subject to debate, the Court is not persuaded that such violated Petitioner's right to a fair trial.  Even if the comment was improper, it was isolated and the evidence against Petitioner was substantial.  The jury was also instructed to decide the case based only on the properly admitted evidence and that comments or questions by the lawyers did not constitute evidence.

Petitioner alleges that his right to a fair trial was violated when the prosecutor asked leading questions when examining Sixto Herrera.  (Trial Transcript, July 12, 2005, 164-79). Petitioner has failed to identify any specific instance in which the prosecutor asked Herrera an improper question.  The Court discerns nothing improper about the manner in which the prosecutor examined Herrera.  Moreover, even if the challenged questions were somehow improper, such did not violate Petitioner's right to a fair trial.  Any improper questions were isolated and the evidence against Petitioner was substantial.  Also, Petitioner was given a full and complete opportunity to cross-examine Herrera.  Finally, the jury was instructed to decide the case based only on the properly admitted evidence and that comments or questions by the lawyers did not constitute

27

evidence.

Petitioner argues that his right to a fair trial was denied when the trial judge allowed the prosecutor to introduce hearsay evidence. (Trial Transcript, July 12, 2005, 207). Specifically, Petitioner refers to the decision by the trial judge to allow Charlotte Evans to testify as to what Sixto Herrera told her after he was attacked by Petitioner. Petitioner objected to this testimony, but the trial judge overruled the objection. As discussed above, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. Habeas relief is warranted only where the evidentiary ruling "is so egregious that it results in a denial of fundamental fairness." The admission of the evidence in question falls well short of this threshold. The prosecutor's conduct, therefore, did not violate Petitioner's right to a fair trial.

Petitioner argues that his right to a fair trial was violated when the prosecutor compelled him to stand in front of the jury for a visual inspection. (Trial Transcript, July 13, 2005, 37). The identity of Sixto Herrera's assailant was a contested issue at trial and as Herrera and Officer Hepworth testified, Petitioner had a distinguishing feature on the right side of his face. In light of such, the Court discerns nothing improper by having Petitioner stand in a manner that permitted the jurors an opportunity to see Petitioner's face.

Petitioner next asserts that his right to a fair trial was violated when the prosecutor, in his closing argument, "spoke about evidence that was never presented to the jury during the course of trial." (Trial Transcript, July 13, 2005, 73-78). Petitioner has failed to identify the evidence or argument in question. The Court discerns nothing in the prosecutor's closing argument that was improper or denied Petitioner the right to a fair trial.

Petitioner next argues that his right to a fair trial was violated because Officer

Hepworth did not perform a complete investigation of the crime scene. The manner in which Hepworth investigated the crime scene does not implicate Petitioner's right to a fair trial. Petitioner does not allege that was in any way prevented from exploring (or exploiting) this issue at trial. In this respect, the Court notes that Petitioner cross-examined Officer Hepworth at length regarding his investigation of the crime scene. This claim is without merit.

The trial court rejected Petitioner's numerous claims of prosecutorial and police misconduct, stating that "[n]one of the actions stated in defendant's motion constitute police and prosecutorial misconduct." *Logan*, No. 05-51323-FH, Opinion and Order at 3. The Michigan Court of Appeals and the Michigan Supreme Court subsequently issued form orders rejecting this claim. The rejection of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

### E.    Actual Innocence

Petitioner asserts that he is entitled to relief on the ground that he is actually innocent of the crimes of which he was convicted.

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Court observed that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400, *see also*, *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding ground

for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding.'") (citations omitted).  As the *Herrera* Court stated, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact."  *Herrera*, 506 U.S. at 400.

As discussed herein, Petitioner has failed to identify any error of federal or constitutional law that occurred during his trial or that has resulted from his conviction and imprisonment.  Accordingly, this particular claim is not cognizable and affords Petitioner no relief.  Furthermore, even if the Court could consider Petitioner's claim of actual innocence, such fails as Petitioner has presented absolutely no evidence even suggesting that he has been wrongfully convicted.  The trial court denied this particular claim, observing that "[t]here was sufficient evidence on the record to permit the jury to find defendant guilty beyond a reasonable doubt." *Logan*, No. 05-51323-FH, Opinion and Order at 2-3.  The Michigan Court of Appeals and the Michigan Supreme Court subsequently issued form orders rejecting this claim.  The rejection of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Logan's petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  July 1, 2011                                    /s/ Ellen S. Carmody
                                                       ELLEN S. CARMODY
                                                       United States Magistrate Judge

31